IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSE LUIS CEBALLOS-CASTILLO,<br><br>    Defendant. | Case No. 6:18-cr-00614-AA<br>**OPINION AND ORDER** |

AIKEN, District Judge:

Before the Court is defendant Jose Luis Ceballos-Castillo's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release). Doc. 53. For the following reasons, the motion is DENIED.

### BACKGROUND

In October 2017, defendant was arrested for operating a stash house for his family members who were dealing methamphetamine. After searching defendant's home, law enforcement found approximately six kilograms of methamphetamine, half

a kilogram of heroin, and a stolen revolver. In March 2019, defendant pled guilty to possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846. Doc. 37. Though his offense carried a 120-month mandatory minimum sentence, the Court imposed a downward departure of 70 months' imprisonment and a five-year term of supervised release for defendant's substantial assistance under 18 U.S.C. § 3553(e). Doc. 48, 49. Defendant has served his sentence at Federal Correctional Institution ("FCI") Lompoc, though he was recently transferred to the minimum-security camp at the United States Penitentiary ("USP") Lompoc, and his projected release date is September 22, 2022.

Defendant filed this motion on April 7, 2021. Doc. 53. The Court heard oral argument on April 29, 2021. Doc. 61.

**STANDARDS**

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release under § 3582(c)(1)(A) provides an exception in rare cases. Until 2018, § 3582 allowed compassionate release only upon a motion by the Bureau of Prisons ("BOP"). With the passage of the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), Congress authorized courts to modify a defendant's sentence on a motion filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that two conditions are met: (1) that "[e]xtraordinary and compelling reasons warrant such a reduction" and (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." If the court finds that those conditions are met, before granting a sentence reduction, it must "consider[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable[.]" 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (reasoning that "[18 U.S.C. §§ 3582(c)(1) and (c)(2)'s parallel language and structure[] compel us to conclude that compassionate release hearings are sentence-modification proceedings and that courts considering motions filed under § 3582(c)(1) must follow a *Dillon*-style test" and describing the three-part test for compassionate release motions (citing *Dillon*, 560 U.S. at 827, 829–30)).

The Sentencing Commission's policy statement regarding sentence reductions under § 3582(c)(1)(A) is found at U.S.S.G. § 1B1.13. The policy statement identifies categories of extraordinary and compelling reasons, including the defendant's age, medical conditions, and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). It also requires courts to find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 1B1.13(2). But this policy statement, which has not been updated since the First Step Act amended § 3582(c)(1)(A), only applies to motions filed by the BOP Director on behalf

of a defendant. *United States v. Aruda*, 933 F.3d 797, 802 (9th Cir. 2021). On a defendant's direct motion for compassionate release, the policy statement "may inform a district court's discretion, . . . but [it is] not binding." *Id.* As a result, the court may consider any extraordinary and compelling reason for release that a defendant might raise. *Id.*

**DISCUSSION**

Defendant submitted his request for compassionate release to the Warden of FCI Lompoc in May 2020, where he was incarcerated at the time, and it was denied in September 2020. Therefore, this Motion is properly before the Court.

Defendant is 32 years old, with a body mass index ("BMI") of 40.7 kg/m², a condition that the Centers for Disease Control and Prevention ("CDC") recognize "can make" adults of any age "more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION: COVID-19 (Apr. 29, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 5, 2021). According to the CDC, "the risk of severe COVID-19 illness increases sharply with elevated BMI." *Id.*[1] Defendant began experiencing COVID-19 symptoms in late April 2020, was tested on May 6, 2020, and received an "indeterminate" result "indicative of presumptive presence of SARS-CoV-2 RNA." Doc. 53, Ex. 8 at 6. Defendant's

---

[1] Defendant also asserts that he has hypertension, based on elevated blood pressure values of 145/84 in June 2020 and 140/85 in September 2020. Doc. 59 Ex. 1 at 25, 28. But defendant has no hypertension diagnosis and his blood pressure values from December 2020 through April 2021 have been in the normal range. *See id.* at 1, 5, 11, 17, 21 (reporting blood pressure values of 121/57 on 12/18/20, 122/79 on 1/27/21, 117/70 on 3/17/21, 105/54 on 3/29/21, and 115/60 on 4/5/21).

symptoms appear to have been mild. He was quarantined in isolation until May 21, 2020, when he received a negative test result. Additionally, defendant has been vaccinated against COVID-19 since the end of March. Given defendant's vaccination status and the lack of any reported COVID-19 infections at the FCI or USP at Lompoc, *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 5, 2021), his present risk of severe illness or death from COVID-19 is not so high that the Court finds that it presents extraordinary and compelling reasons to reduce his sentence.

In any event, defendant does not seek relief based on his present risk from COVID-19. Instead, he argues primarily that the extreme circumstances he has already experienced while incarcerated at FCI Lompoc, generally, and during the COVID-19 pandemic present extraordinary and compelling reasons to reduce his sentence to time served.

He notes that despite this Court's recommendation that defendant serve his time at the Sheridan Camp or FCI Sheridan and that he be afforded drug treatment pursuant to 18 U.S.C. § 3621, BOP placed him at FCI Lompoc, a higher security prison almost 900 miles away from his family, including two young daughters, in Salem. And BOP also determined that defendant was not eligible for a sentence reduction for successfully completing a residential drug and alcohol program under § 3621.

Additionally, the Lompoc facilities have been the site of one of the worst COVID-19 outbreaks in the BOP system. In the spring of 2020, more than 1,000

Page 5 – OPINION AND ORDER

inmates at the facility tested positive for COVID-19. *See Facility-Level BOP COVID-19 Trends*, U.S. DEP'T OF JUST. OFF. OF THE INSPECTOR GEN., https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/page_2/ (last visited May 5, 2021) (OIG interactive dashboard with data relating to COVID-19 within BOP). An in-person inspection of FCC Lompoc conducted on September 1 and 2, 2020, by Homer Venters MD, MS, a court-appointed expert in *Torres et al. v. Milusnic et al.*, Case No. CV 20-4450-CBM-(PVCx), revealed deficiencies in the facility's response to the outbreak and pandemic, including lack of access to medical and chronic care services and failure to comply with basic infection control protocols. Doc. 53 Ex. 5 at 22-24. Dr. Venters also found that the facility used a "punitive approach to quarantine" that was "not appropriate and runs counter to CDC guidelines on making COVID-19 responses in detention settings non-punitive." *Id.* at 25. In addition to experiencing a quarantine at Lompoc, defendant was subjected to extended periods of complete lockdown aimed at controlling the spread of COVID-19 in the facilities. In defendant's view, the Court should reduce his sentence to time served because all these conditions have made his sentence "far harsher than this Court anticipated at his sentencing." Mot. at 7.

Courts have found extraordinary and compelling reasons for relief under § 3528(c)(1) based on the length of a defendant's sentence and disparities caused by changes in sentencing laws. *See United States v. Li*, CR No. 06-00143 JMS (01), 2021 WL 1113663, at *6–7 (D. Haw. Mar. 23, 2021) (discussing cases in which courts considered whether drastic sentencing disparities created by the First Step Act's

reforms can constitute extraordinary and compelling reasons for the purpose of compassionate release). For example, in *US v. McCoy*, the Fourth Circuit held that district courts did not err in finding that "the severity of a [pre-First Step Act 18 U.S.C.] § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." 981 F.3d 271, 285 (4th Cir. 2020). In *McCoy*, each defendant had been convicted of robberies and accompanying firearms violations under 18 U.S.C. § 924(c) and had their sentences under § 924(c) sentences were "stacked." The Fourth Circuit endorsed the district courts' consideration of "two distinct features of the defendants' § 924(c) sentences," including "the sheer and unusual length of the sentences"—some sentences were about twice as long as federal sentences imposed today for murder—and "the gross disparity" between the sentences and those that "Congress now believes to be an appropriate penalty for the defendants' conduct" based on the First Step Act's eliminate of sentence-stacking under § 924(c). *Id.* And the Fourth Circuit emphasized that each district court's decision was "the product of individualized assessments of each defendant's sentence. *Id.* at 286; *see also United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) (affirming a district court's finding of extraordinary and compelling reasons based on its "individualized review of all the circumstances of [the defendant's] case," including defendant's young age at sentencing, the "incredible" length of his stacked mandatory sentences under

§ 924(c), the First Step Act's elimination of sentence-stacking, and the disparity between defendant's sentence and post-First Step Act sentences).

This case, however, does not present similar circumstances. The 70-month sentence that this Court imposed was a significant downward departure from the 120-month statutory minimum for defendant's offense. Thus, the Court cannot find that the sentence was unusually long, and any disparity between the sentence and what Congress believes to be an appropriate penalty for defendant's conduct favors defendant. And though the Court agrees that the pandemic, and associated conditions at FCI Lompoc, have made defendant's incarceration harsher than the Court could have anticipated at the time of sentencing, the conditions experienced by defendant have not been so severe or unusual that they constitute extraordinary and compelling reasons for release.[2] Instead, defendant's arguments are more appropriately addressed under considerations of applicable sentencing factors under § 3553(a), which this Court need not reach without a finding of extraordinary and compelling reasons.

Although the rare and extraordinary nature of compassionate release constrains the Court's ruling on the present motion, the Court recommends that BOP transfer defendant to a residential reentry center ("RRC") at the earliest practicable

---

[2] This Court's decision in *United States v. Olawoye*, 477 F. Supp. 3d 1159 (D. Or. 2020), on which defendant relies in part, do not suggest otherwise. In *Olawoye*, the Court observed that "[t]he sentence defendant has served has undoubtedly been harsher than the one originally contemplated at the time of sentencing" while considering applicable § 3553(a) factors *after* separately determining that the defendant's health conditions, the "exponential growth in positive COVID-19 tests" presently seen at the private prison where he had been incarcerated, and the fact that all inmates at the facility would be transported to new ones in September when the facility was set to shut down presented extraordinary and compelling reasons for relief. 477 F. Supp. 3d at 1165–66.

time to allow him the maximum amount of time in community corrections for his transition out of custody and back into the community. *See Sacora v. Thomas*, 628 F.3d 1059, 1061–62 (9th Cir. 2010) (recognizing that 18 U.S.C. §§ 3621(b) and 3624(c) "govern the BOP's authority to place inmates in its custody in RRCs"); 18 U.S.C. § 3621(b)(4)(A)–(B) (authorizing BOP to "designate the place of the prisoner's imprisonment" upon consideration of, in pertinent part, "any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted; or recommending a type of penal or correctional facility as appropriate").

## CONCLUSION

Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) (doc. 53) is DENIED without prejudice and with leave to renew if circumstances change. The Court will consider any renewed motion on an expedited basis.

IT IS SO ORDERED.

Dated this __6th__ day of May 2021.

                                    /s/Ann Aiken
                                      Ann Aiken
                              United States District Judge